# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ACS TRANSPORT SOLUTIONS, INC., ) </br> ) </br> **Plaintiff,** ) </br> ) </br> v. ) </br> ) </br> NASHVILLE METROPOLITAN ) </br> TRANSIT AUTHORITY ) </br> ) </br> ) </br> **Defendant.** ) | No. 3:13-cv-1137 </br></br> Judge Sharp |

## MEMORANDUM

Before the Court is Defendant Nashville Metropolitan Transit Authority's ("MTA") Motion to Dismiss for *forum non conveniens* (Docket No. 26). Defendant originally filed a Motion to Dismiss for Improper Venue (Docket No. 18), which the Court denied without prejudice in an Order dated July 18, 2014 (Docket No. 25), because Federal Rule of Civil Procedure 12(b)(3) is not the correct motion to enforce a forum selection clause. Plaintiff ACS Transport Solutions Inc. ("ACS") filed a Response in Opposition to the Motion to Dismiss (Docket No. 30), to which Defendant filed a reply (Docket No. 31). For the reasons set forth below, Defendant's Motion to Dismiss will be denied.

## I. SUMMARY OF THE FACTS

As set forth in the Court's prior Order, Defendant engaged Plaintiff to supply certain communications systems for Nashville's public bus system. Defendant purchased a Computer Aided Dispatch and Automated Vehicle Locator (CAD/AVL) system and other on-board systems from Plaintiff in 2007, as memorialized in the "CAD/AVL Contract." (Docket No. 27-

1

1).[1] In 2009, Plaintiff also provided a real-time passenger information system, as set forth in the "Sign Contract." (Docket No. 27-3). Both the CAD/AVL Contract and the Sign Contract (collectively "the Contracts") contained a forum selection clause specifying Davidson County courts.[2]

Additionally, the Parties entered into two "End-User Software License Agreements" (the "License Agreements") concurrently with the Contracts, in 2007 and 2009 respectively. (Docket Nos. 27-2 & 27-4). These granted Defendant "non-exclusive, non-transferable, non-assignable license to use the Licensor Software only in conjunction with its use and operation of the System." (Docket No. 27-2 at 1 & Docket No. 27-4 at 1).[3] Each also contained a forum selection clause specifying the state courts of Tennessee.[4]

Defendant terminated the Contracts on September 25, 2012. The Amended Complaint asserts that "MTA abruptly removed ACS staff from MTA premises … and have since denied ACS system access. Soon after expelling ACS workers from its facility, MTA sent ACS a notice of termination of the CAD/AVL Contract and the Sign Contract." (Docket No. 15 at 3).

---

[1] The CAD/AVL Contract was signed by Plaintiff's predecessor Orbital Sciences Corporation. ACS purchased the unit of Orbital Sciences Corporation responsible for the CAD/AVL Contract in 2008. At that time, the CAD/AVL Contract was assigned to ACS.

[2] Section 21, para. 10 of the CAD/AVL Contract: "Any action between the parties arising from this agreement shall be maintained in the courts of Davidson County, Nashville, Tennessee. The Contractor shall include this provision verbatim in every subcontract entered into by the Contractor in the performance of its obligations under this contract." (Docket No. 27-1 at 23).
    Paragraph 37 of the Sign Contract: "Any action between the parties arising from this agreement shall be maintained in the chancery courts of Davidson County, Tennessee." (Docket No. 27-3 at 16).

[3] To define "System" as it appears in the License Agreements, the Court looks to the preceding paragraphs in each License Agreement. The License Agreement of 2007 references the "computer-aided dispatch and automatic vehicle location products ('Radio Communication CAD/AVL System')." (Docket No. 27-2 at 1). The License Agreement of 2009 references the "Passenger Information System for Music City Central … and the new BRT Transit Line ('ACS SmartTraveler System')." (Docket No. 27-4 at 1).

[4] Section 7 of the End-User Software License Agreements: "It is the intent of the parties hereto that this agreement shall be construed, interpreted, and applied in accordance with the Laws of the State of Tennessee, and the courts of such state shall have exclusive jurisdiction and shall be the exclusive venue of any lawsuit instituted by any party." (Docket No. 27-2 at 3 & Docket No. 27-4 at 3).

Plaintiff claims that termination of the Contracts also terminated Defendant's right to use Plaintiff's software under the License Agreements. Through counsel, Plaintiff notified Defendant that any subsequent use of the software was unlicensed. However, Plaintiff asserts, Defendant has continued to use the software without permission and without paying for this use, thus infringing on Plaintiff's copyrighted material in violation of federal law.

In response to Plaintiff's copyright claim, Defendant seeks to enforce the forum selection clause contained in the Contracts and License Agreements. Defendant argues that Plaintiff has improperly brought its claim before this Court, citing "an exception" to federal courts' exclusive jurisdiction over claims arising from the Copyright Act where "the copyright claim is in actuality a contract claim predicated on rights derived from a contract." (Docket No. 27 at 5). Because "the federal Copyright Act plays only a tangential role in ACS's copyright infringement claim regarding whether MTA has a license to continue to use ACS's copyrighted software," and in light of the forum selection clause, Defendant concludes Tennessee state courts are the proper venue. (Id. at 8).

## II. APPLICATION OF LAW

Federal courts have exclusive jurisdiction of claims arising under the Copyright Act. See 28 U.S.C.A. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."). However, this jurisdiction does not extend to all questions in which a copyright "may be the subject matter of the controversy." Combs v. Plough, Inc., 681 F.2d 469 (6th Cir. 1982) (quoting New Marshall

3

Engine Co. v. Marshall Engine Co., 223 U.S. 473, 478 (1912) (considering the jurisdiction of the federal courts in the patent context)).

"[A] case 'arises under' federal law in 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Harper v. AutoAlliance Intern. Inc., 392 F.3d 195, 202-03 (6th Cir. 2004) (citing Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983)). To satisfy this standard, the Amended Complaint must contain a short and plain statement of the claim showing that Plaintiff is entitled to relief. See FED. R. CIV. P. 8(a)(2). It must also provide the Defendant with fair notice of Plaintiff's claim, as well as the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47, (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In the copyright infringement context, Plaintiff must plead two elements: (1) ownership of a valid copyright in the material at issue; and (2) violation by Defendant of an exclusive right that Plaintiff holds in that material. See 17 U.S.C.A. § 501(a); Feist Publ'n Inc. v. Rural Tel. Serv. Co. Inc., 499 U.S. 340, 361 (1991). Computer programs are protected under the Copyright Act as "literary works." See 17 U.S.C. § 102(a); Digital Filing Sys., LLC v. Aditya Intern., 323 Fed. Appx. 407, 418 (6th Cir. 2009).

Defendant argues the Parties' dispute is essentially one of contract interpretation: when and how the License Agreements can be terminated. It cites Minor Miracle Prods. LLC v. Starkey for the proposition that "if the original claim centers around an issue where state law

would govern," then "a state court may indeed exercise jurisdiction … even where there are incidental factual questions of copyright ownership or control." 2012 WL 112593, at *5 (Tenn. Ct. App. Jan. 12, 2012) (internal citations omitted). This case relies on the Tennessee Supreme Court's decision in Hold Stitch Fabric Mach. Co. v. May Hosiery Mills, which held that "where an action is brought on a contract of which a patent is the subject matter, either to enforce the contract or to annul it, the case arises on the contract and not under patent laws, and the state court has jurisdiction." 195 S.W.2d 18, 21 (Tenn. 1946).

Review of this persuasive authority reveals it is distinguishable from the matter currently before the Court. In Minor Miracle, the court characterized the complaint as alleging "breach of fiduciary duty …, breach of contract, and conversion." 2012 WL 112593, at *6. It concluded that "[s]imply because the product to be produced … was copyrightable" did not convert "this state law action into one involving a copyright claim that must be brought in federal court." Id. Similarly, the Tennessee Supreme Court in Hold Stitch considered claims involving "damages for a breach of … covenants, or for a specific performance thereof, or [those which] ask[] the aid of the court in declaring a forfeiture of the license." 195 S.W.2d at 23.

The mere existence of a contract for use of the materials at issue does not preclude Plaintiff from bringing a copyright action. See Encore Entm't, LLC v. KIDdesignes, Inc., 2005 WL 2249897, at *5 (M.D. Tenn. Sept. 14, 2005) ("A licensee infringes an owner's copyright if its use exceeds the scope of the license afforded."); see also E. Broad. Am. Corp. v. Universal Video, Inc., 2006 WL 767871, at *2 (E.D.N.Y. March 24, 2006) ("Even if a license agreement previously existed, a copyright action can arise once a licensee makes himself a 'stranger' to the licensor by using the copyrighted material in a way that exceeds the duration or scope of the license."); Kanakos v. MX Trading Corp., 1981 WL 1377, at *2 (S.D.N.Y. Sept. 16, 1981)

("Where a licensee utilizes a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright. In both cases, the resulting cause of action is one for copyright infringement, and the claims against both arise under the copyright statutes."). Here, the Amended Complaint arises solely from the Copyright Act and, for the purposes of this early stage of litigation, satisfies both elements of an infringement claim. Plaintiff asserts it owns the copyrighted software programs used by Defendant and that it licensed those software programs to Defendant "for use during the terms of the CAD/AVL and Sign Contracts." (Docket No. 15 at 4, ¶ 15). Plaintiff further contends that it did not give Defendant permission to use the software after Defendant terminated the Contracts on September 25, 2012, but Defendant continues to do so.

The Court agrees with Plaintiff that the current dispute is similar to <u>Kamakazi Music Corp. v. Robbins Music Corp.</u>, 684 F.2d 228 (2d Cir. 1982). There, a defendant facing a copyright infringement suit sought to compel arbitration pursuant to an arbitration clause in the parties' contract. The Second Circuit upheld the district court's determination that "[plaintiff's] suit is, was, and always has been based on the Copyright Act" because it contended defendant had published plaintiff's copyrighted works after their contract expired. <u>Id.</u> at 230. The "explicit language" of plaintiff's complaint to this effect, and "the acts complained of" were sufficient to persuade the court that the claim sounded in copyright infringement. <u>Id.</u>

Defendant points to Plaintiff's original complaint, which also asserted breach of contract and unjust enrichment claims, to support its contention that the copyright issue is tangential to the state law claims properly brought in state courts pursuant to the forum selection clause. However, the Court need not look to the original complaint in making its determination. The

6

Amended Complaint "'completely supercedes [*sic*] the original complaint and thus the original complaint no longer performs any function in this case.'" Lopez v. Metro. Gov't of Nashville, 2008 WL 913085, at *2 (M.D. Tenn. April 1, 2008) (quoting Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003)). See also Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000) (noting that a plaintiff's amended complaint was the "legally operative complaint" because a "new complaint supersedes all previous complaints and controls [the] case from that point forward") (citing In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)); Glynn v. Ocwen Loan Servicing, LLC, 2014 WL 5663684, at *1 (E.D. Mich. Nov. 4, 2014) (collecting cases).

### III. CONCLUSION

Because Plaintiff offers a well pleaded complaint setting forth a cause of action for infringement under the Copyright Act, this Court properly exercises jurisdiction and Defendant's Motion to Dismiss for *forum non conveniens* will be denied. An appropriate order will enter.

*[signature: Kevin H. Sharp]*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE