IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ACS TRANSPORT SOLUTIONS, INC.                                          PLAINTIFF

VS.                             3:13-CV-01137

NASHVILLE METROPOLITAN TRANSIT AUTHORITY                               DEFENDANT

**ORDER**

Pending are cross-motions for summary judgment (Doc. Nos. 59, 62). The parties have responded and replied.[1] As set out below, the cross-motions are GRANTED in part and DENIED in part.

**I.     BACKGROUND[2]**

In November 2007, MTA contracted with ACS to design and install a system that would allow MTA to communicate with, dispatch, and track its buses (the "system contract"). Embedded in the system was ACS's copyrighted software, which ACS licensed to MTA through the contract as set out in a software-license agreement executed the same day (the "system license").[3]

In November 2009, MTA contracted with ACS to install a network of signs at MTA's terminal and bus stops (the "sign contract"). ACS's copyrighted software was embedded in the

---

[1] Doc. Nos. 70, 72, 74, 75.

[2] Unless otherwise noted, the facts in this section are undisputed.

[3] Doc. Nos. 27-1, §§ 1, 17; 27-2.

1

equipment used to operate the signs, which ACS licensed to MTA through the contract as set out in a software-license agreement executed the same day (the "sign license").[4]

In September 2012, MTA kicked ACS's employees off the job and terminated both contracts; but continued to use the system, signs, and software. In June 2013, ACS notified MTA that it had no license to use ACS's software; however, MTA continued using the software until October 2014.

ACS's Amended Complaint asserts a claim against MTA for infringement of ACS's software copyright.[5] For ACS to succeed on its copyright-infringement claim, it must prove that (1) ACS owned a valid copyright to its software; and (2) MTA used ACS's software without a license.[6] The parties agree that ACS's software copyright is valid, and that MTA used the software from September 2012 through October 2014. Accordingly, to prevail on its copyright-infringement claim, ACS must prove that MTA's use of ACS's software after September 2012 was unlicensed. MTA asserts that, although it terminated the contracts, it had an express (and an implied) license to use the software. ACS contends that because the software-license agreements were part of the contracts, MTA terminated the software-license agreements when MTA terminated the contracts.

---

[4] *See* Doc. No. 27-3, §§ 1, 30.

[5] Doc. No. 15.

[6] See 17 U.S.C. § 501(a).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[7] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[8]

A court must view the facts in the light most favorable to the party opposing the motion[9] and may not "weigh the evidence and determine the truth of the matter . . . ."[10] The moving party must "identify portions of the record that demonstrate the absence of a genuine dispute over material facts."[11] It can do this "by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'"[12] If the moving party meets this burden, "the nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[13] Only disputes over facts that

---

[7] Fed. R. Civ. P. 56.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[9] *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

[10] *Anderson*, 477 U.S. at 249.

[11] *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

[12] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[13] *Id.*

may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[14]

## III. DISCUSSION

### A. Express License

MTA asserts that it did not terminate the licenses – only the contracts – so it had an express license to use ACS's software. This theory is without merit because the licenses were part of the contracts.

According to the first section of the system contract, the "End-User Software License Agreement" is among the documents that constitute the system contract.[15] Section 17 of the system contract reads, "[ACS] . . . hereby grant[s] Nashville MTA a license to use the OrbCAD software provided in accordance with the terms of the Software License Agreement to be executed by the parties."[16] The sign contract also notes that the end-user software-license agreement is part of the documents that constitute the sign contract – something MTA's representative previously conceded.[17] Further, section 30 of the sign contract reads, "[ACS] . . . hereby grant[s] Nashville MTA a license to use the software provided in accordance with the terms of the Software License Agreement to be executed by the parties."[18] The software-license agreements were executed the same day as the contracts.[19]

---

[14] *Anderson*, 477 U.S. at 249.

[15] Doc. No. 27-1.

[16] *Id.*

[17] Doc. Nos. 27-1, 72.

[18] Doc. No. 27-3.

[19] *See* Doc. Nos. 27-1, 27-2, 27-3, 27-4.

4

According to the software-license agreements, MTA could use ACS's software only in conjunction with the contracts.[20] The absence of a rescission or reversion clause in a licensing agreement is a factor that weighs against rescission.[21] But here, the software-license agreements had the following rescission clause: "Licensee [MTA] may terminate this Agreement as set forth in the [systems contract]."[22] Accordingly, when MTA terminated the contracts in September 2012, it lost the express license to use ACS's software.

MTA also asserts that MTA paid (or will pay) for the systems, and, is therefore, entitled to use the software embedded within those systems indefinitely.[23] Although ACS has conceded that MTA would have been allowed to use the software indefinitely without further payments to ACS if the parties had fully performed their obligations under the contract,[24] the parties did not fully perform their obligations. In a state-court action involving these parties and these contracts, a jury determined that MTA will have fully performed its contractual obligations once it pays the amount the state court awarded to ACS.[25] Even assuming this would have given MTA a perpetual right to use the software, MTA has not paid the amount awarded to ACS by the state court. This argument also fails because, under the Copyright Act, a non-exclusive license (such as the software-license agreements here) cannot transfer ownership of the copyrighted software.[26]

---

[20] *Id.*

[21] *Vintage Verandah, Inc. v. Mastercraft Intern., Inc.*, No. 4:04-CV-00066-BRW, 2006 WL 3735975, at *4 (E.D. Ark. Dec. 15, 2006).

[22] Doc. Nos. 27-2, 27-4.

[23] Doc. No. 74.

[24] *See* Doc. No. 70-1.

[25] *Id.*

[26] 17 U.S.C. § 101.

5

The express license was rescinded in September 2012 when MTA terminated the contract. Accordingly, ACS is entitled to summary judgment on this issue.

      **B.    Implied License**

MTA asserts the alternative theory that it had an implied license to use the software while it transitioned to the new system. When MTA hired ACS to install the new communication system, ACS removed the previous communication system from MTA's buses. After MTA terminated the contracts, it hired another company to replace ACS's system.

MTA cites *Quinn v. City of Detroit*[27] in support of its implied-license theory. In *Quinn*, the district court held that a licensor who attempted to terminate an implied license was estopped from terminating the license without first giving the licensee a reasonable time to transition to new software.[28]

Here, unlike *Quinn*, the licensee (MTA) terminated an express license. Although *Quinn* is not directly on point, MTA had an implied right to use the software for a reasonable time while it had another system installed. If MTA used ACS's software after a reasonable transition period, it exceeded the scope of its implied license. It seems to me that if MTA needed more than two years to replace the equipment it should have waited until after a new system was installed before terminating ACS. Nevertheless, the material fact of how long a reasonable transition period is remains in genuine dispute. Accordingly, summary judgment on this issue is inappropriate.

---

[27] *Quinn v. City of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. Sept. 29, 1998).

[28] *Id.*

## CONCLUSION

For the reasons set out above, the Motions are DENIED in part, and GRANTED in part. Accordingly, a jury trial will commence on Tuesday, May 24, 2016, on whether MTA used the software after a reasonable transition period (and, if so, on damages).

By noon on Monday, May 9, 2016, the parties are directed to submit proposed jury instructions and a list of witnesses expected to testify, with an estimate of the time needed to conduct the direct examination of each witness. By noon on Thursday, May 12, 2016, the parties are directed to submit an estimate of the time needed to conduct the cross examination of the opposing party's witnesses.

IT IS SO ORDERED this 29th day of April, 2016.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE